# Hartley's Appeal.

103  23
155  89

1. The defeasible character of a conveyance absolute on its face, executed prior to the Act of June 8th 1881 (P. L. 84), may be shown by parol testimony.

2. Such a parol defeasance may be established by evidence that is clear, precise and indubitable, notwithstanding the fact that there is conflicting or rebutting testimony.

3. The inherent improbability of the allegations of an answer to a bill in equity is insufficient of itself to overcome its responsive character, and the complainant must establish his case by other evidence.

March 14th 1883.  Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ. CLARK, J., absent.

APPEAL from a decree of the Court of Common Pleas of *Susquehanna county:* In Equity. Of January Term 1883, No. 76.

This was an appeal by Mark J. Hartley, from a decree of the said court sustaining a report of a Master, whereby a bill in equity, in which George T. Tingley was complainant, and said Hartley defendant, praying for the reconveyance by the latter to the former of certain property, was sustained, and the relief granted.

The facts alleged in the bill and found by the Master were as follows : In 1857, Tingley went into the possession of a farm in Lenox township, under articles of agreement with the owners, which provided that the legal title should not be conveyed to said Tingley until payment of the entire purchase money, of which the sum of $243.40 remained due in 1877. In that year

Tingley, desiring to go west, assigned his equitable interest to Hartley by an indorsement on the articles of agreement, which read as follows :

"For a valuable consideration, I hereby transfer, assign and set over all my right, title and interest to the within piece or parcel of land unto M. J. Hartley."        "G. T. Tingley.

"Sept. 1, 1877.

The consideration of said indorsement was a parol agreement that Hartley would pay the residue of the purchase money, obtain a deed for the land in his own name, sell the same to some desirable purchaser, and pay over to Tingley the amount of the sale, less the balance of the purchase money and his reasonable charges or expenses ; or in the event of failure to sell, would hold the property as security for the amount advanced, and reconvey it to Tingley upon the payment of said amount and his expenses. In pursuance of this agreement, Hartley paid the balance of the purchase money, took a deed in his own name, placed it upon record, paid the taxes on the property which were assessed in his name, but never took possession of the property, which was retained by Tingley. Some months thereafter, Tingley, having decided to remain at Lenox, notified Hartley of his determination, and requested a reconveyance of the property. Hartley promised to comply with the request, but up to the date of the filing of the bill, neglected or refused to do so. On September 28th 1881, Tingley tendered Hartley the sum of $365, and again formally demanded a reconveyance, which was refused. This bill was then filed.

The answer denied this statement of facts, alleged that the assignment was a bona fide purchase by Hartley of Tingley's equitable interest in consideration of the sum of $500, which was then paid, and that Tingley had subsequently agreed to repurchase the property for $771.98.

After hearing a number of witnesses in support of the bill and answer, the Master sustained the allegations of the complainant and negatived those of the defendant. He further found that the value of the farm at the time of the assignment was from $1,200 to $1,400 ; that Hartley, besides paying the unpaid purchase money, had expended for taxes and other charges the sum of $79.22, which with the unpaid purchase money and the interest thereon, amounted to $388.33. He therefore recommended a decree that Hartley should reconvey to Tingley the title to said property upon the payment by the latter of the said amount.

The exceptions filed by Hartley to this report were dismissed by the court and a decree entered in accordance with the recommendations of the Master. The exceptant thereupon

took this appeal, assigning for error the action of the court (1) in holding that the assignment was a mortgage and not an absolute conveyance (2) in holding that there was any sufficient or legal tender by the complainant; (3) in holding that the evidence justified a decree changing an absolute into a defeasible conveyance.

*Wm. M. Post* and *Little & Allen*, for the appellant.

*Watson* (with whom was *McCollum*), for the appellee.

Mr. Justice STERRETT delivered the opinion of the court, May 25th 1883.

The averments of fact, on which the equity of the plaintiff below was grounded, are substantially sustained by the report of the learned Master, and hence the decree based thereon should not be disturbed, unless the conclusions drawn by him and approved by the court were unwarranted by the testimony. He found, in substance, that prior to September 1st 1877, the appellee was the equitable owner, and has been in possession of the land in controversy since 1857, under articles of agreement on which there was due only $243.40 of the consideration money; that on the first mentioned date, he assigned by indorsement on the agreement, his right title and interest therein to appellant, who, in consideration thereof, agreed to pay the residue of purchase money to the holder of the legal title, obtain a deed for the land and hold the same as security for repayment of the amount thus advanced and expended in procuring the conveyance. The transaction was substantially the same in principle as if appellant had loaned appellee a sum sufficient to enable him to take the deed to himself, and the latter had then conveyed the land to appellant by deed absolute in form, but intended merely as security for repayment of the loan; in other words, a conveyance which, although absolute on its face, was intended by the parties thereto as security only. It is unnecessary to cite authorities to show that the defeasible character of such a conveyance, if executed prior to the Act of June 8th 1881 (P. L. 84), may be shown by oral testimony. If the transaction, out of which this contention has arisen, had occurred since the passage of that Act the plaintiff below would have had no case; but, having taken place before, the rule of evidence, recognized in Sweetzer's Appeal, 21 P. F. Smith 264, and other cases, is still applicable. As was said in that case it is no longer "an open question that a conveyance, absolute upon its face, may be shown to be security for money loaned, and this may be made to appear by oral testimony. The rule does not impinge upon the statute of frauds, for the deed, if the proof be sufficient, never was a conveyance but simply a security for

money. It was necessary to so hold the law to prevent fraud. If the entire arrangement shows the purpose of a transfer of property, by deed or otherwise, to be a security merely, it would be simply hypercritical to contend that this would not be evidence of the fact as fully as if expressly declared in so many words." The rule as to the kind and degree of evidence required to convert such a deed into a mortgage is equally well settled. It is said in Rowand v. Finney, 15 Norris 196, that while parol testimony is admissible to thwart the fraud of one who accepted a deed, simply as security, and afterwards attempts to hold it as an absolute conveyance, the evidence must be clear precise and indubitable. By this, however, it *is* not meant that there shall be no conflicting or rebutting testimony on the subject of the parol defeasance. If the party who sets up the defeasance is able to prove the fact by evidence that is not only clear and precise, but at the same time carries with it a conviction of its truth, he is entitled to succeed, notwithstanding there may be rebutting testimony tending to prove the contrary. Full credence may be given to the testimony on one side, while that on the other may be rejected as unworthy of belief, or at best, insufficient to create even a serious doubt.

Testing the learned Master's conclusions of fact by these principles, we cannot say they are erroneous ; on the contrary, we think he was fully warranted by the testimony in finding as he did. In the first place, it is almost incredible that the appellee, who had purchased and occupied the land in question for over twenty years, and had paid nearly all the purchase-money, would sell it for so much less than its admitted market value. In the absence of testimony tending to show any motive for such extraordinary conduct, it is difficult to conclude that any sane man would be guilty of such folly ; but, without more, the inherent improbability of the transaction, as claimed by appellant, would be wholly insufficient to overcome the responsive denial of his answer. Hence it was necessary for the appellee to sustain his position by other evidence, and we have it in the positive testimony of several witnesses, corroborating him, and directly contradicting appellant. They testify, in substance, that they were present when the latter spoke of his claim against Tingley, the appellee ; that, referring to it as a pecuniary claim against the land, he said "he did not want the place, all he wanted was his money ; and, when asked how much Tingley owed him on the land, he replied $250, that he could have the place back by paying that, as he did not want the land." Lewis Lovelace, one of the witnesses, says, "I heard Hartley say that Tingley owed him $250 on the place. . . . . . Heard him say at different times he would give Tingley back the place if he would give him back what money

[Pierce's Appeal.]

he had paid on it with interest.  I heard him say at one time in the horse-shed, that Tingley owed him $250 on the place."

The acts and declarations of appellant, as disclosed by the testimony, are not only inconsistent with the defence set up in the answer, but they tend strongly to prove that, instead of being a good-faith purchaser of the land in question, he agreed to take the legal title and hold it simply as security for the amount advanced by him.   Without further reference to the testimony, suffice it to say that the conclusions of fact, upon which the decree is based, were fully warranted by the evidence.

Decree affirmed and appeal dismissed at the costs of the appellant.